1 of 14

JASON D. HAWKINS (9182)
SCOTT YOUNG (10695)
NATHAN R. SKEEN (12662)
ERICH T. LINDER (19599)
**SPENCER FANE LLP**
10 Exchange Place, Suite 1100
Post Office Box 45000
Salt Lake City, Utah 84145
Telephone: (801) 521-9000
jhawkins@spencerfane.com
rsyoung@spencerfane.com
nskeen@spencerfane.com
elinder@spencerfane.com

*Attorneys for Defendant Joe Nicolas Marriott*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KENDRICK BROS. ROOFING, INC.; BRAD L. KENDRICK INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF HWJR, LLC; AND JENIFER H. KENDRICK INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF HWJR, LLC. <br><br> Plaintiffs, <br> v. <br><br> GREGORY W. KENDRICK; JENNIFER L. KENDRICK; ETHAN B. KENDRICK; JENNIFER HIGASHIYAMA; JOE NICHOLAS MARRIOTT; ORCHARD ELMS, LLC; BOBCAT INVESTMENTS IRREVOCABLE TRUST; BYLB LIVING TRUST; DOCW35 TRUST; MDAA LIVING TRUST; SJK TRUST; GJK LIVING TRUST; LINQSHIP LLC; KBR CONSTRUCTION SERVICES LLC; AND KBR PAYROLL LLC; <br><br> Defendants. <br> *And* <br><br> HWJR, LLC; <br><br> Nominal Defendant. | **MEMORANDUM IN OPPOSITION TO COUNTERCLAIM-DEFENDANT BRAD KENDRICK'S MOTION TO DISMISS COUNTERCLAIMS OF JOE NICOLAS MARRIOTT** <br><br> Case No. 1:24-CV-00139-DBB-CMR <br><br> Judge David Barlow <br><br> Magistrate Judge Cecilia M. Romero |
| AND RELATED COUNTERCLAIMS. | |

Defendant Joe Nicolas Marriott (hereinafter "Nick" or "Defendant") submits the following memorandum in opposition to Counterclaim-Defendant Brad Kendrick's (hereinafter "Brad") Motion to Dismiss Counterclaims of Joe Nicolas Marriott (the "Motion").

## INTRODUCTION

Brad's Motion seeks to dismiss each cause of action in Nick's Counterclaim.  But rather than argue how or why Nick failed to plead the essential elements of each cause of action, Brad relies largely on his own version of additional facts and inferences, which is improper at this stage. The Court should reject Brad's attempts to dispute factual Counterclaim allegations, and instead apply the proper pleadings-stage standard.

For example, Brad first argues that Nick does not plead facts showing that Brad was a party to the Water Agreement at issue. He contends that "[b]ecause HWJR holds title to the parcel in question, not Brad, it therefore appears that the parties to the Water Agreement were Nick and HWJR, not Nick and Brad."[1] While this very well may be Brad's factual defense against the first, second, and fifth Counterclaim causes of action, it does nothing to undermine the sufficiency of Nick's pleading. The Counterclaim expressly alleges that Nick's agreement for water use was with Brad (not HWJR) to supply water to Brad's cattle.[2] Accordingly, Brad's factual disputes regarding who or what he was acting on behalf of when entering the water agreement cannot form the basis for dismissing the contract-based causes of action at this stage.[3]

Next, Brad argues that Nick's contractual claims are barred by the statute of limitations. He identifies the timing of the Water Agreement, and then refers to facts that have not been alleged,

---

[1] ECF No. 128 at 3-4.
[2] ECF No. 87, at 19-20 [Counterclaim, ¶¶ 18-21].)
[3] Should Brad introduce evidence during discovery that supports his factual arguments, Nick will move to amend his counterclaim within the deadlines established by the Scheduling Order, Dkt. 127.

such as when or whether charges/requests for payment were made. This attempt to dismiss based on allegations that are not found in the Counterclaim fail under a 12(b)(6) standard as well.

Third, Brad argues that Nick has insufficiently plead his counterclaims regarding the hay thefts.  In doing so, Brad again argues the factual merits of the claims based on his own favorable interpretation of facts, rather than the facts alleged in the Counterclaim with reasonable inferences taken in the light most favorable to Nick. Brad's interpretation of the facts may not be considered at this stage as it conflicts with what is to be considered under Rule 12(b)(6).

Fourth, Brad argues that Nick has insufficiently plead his emotional distress counterclaims. In his arguments on these claims, Brad assesses the allegations of Nick's health and wellness in a light that is most favorable to him, rather than in a light that is most favorable to Nick. In doing so, Brad ignores the proper standard under which his Motion should be denied.

Lastly, Brad argues that Nick's stalking counterclaim is procedurally deficient. As demonstrated more fully in this memorandum, the Utah state statute applicable to civil stalking injunctions does not on its face deprive this Court of jurisdiction. Furthermore, Nick has presented sufficient facts in the Counterclaim to support the relief he requests due to Brad's stalking activities.

In short, the Court should reject Brad's attempts to dispute the factual Counterclaim allegations, apply the proper pleadings-stage standard, and deny the Motion in its entirety.

## LEGAL STANDARD

To adequately plead a claim, a claimant need only allege "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A claim is inadequately pled under Rule 12(b)(6) only if the allegations do not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a Rule 12(b)(6) motion, the court accepts "all well-pleaded factual allegations in the complaint as true, and [the court] view[s] them in the light most favorable to the nonmoving party." *Sinclair Wyo. Refin. Co. v. A&B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021). "Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face." *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (citing *United States ex rel. Reed v. KeyPoint Gov't Solutions*, 923 F.3d 729, 764 (10th Cir. 2019)).

## ARGUMENT

I. **THE COUNTERCLAIM EXPRESSLY ALLEGES BRAD ENTERED AND BREACHED THE WATER AGREEMENT.**

Brad asks the Court to dismiss Nick's first, second, and fifth causes of action, namely Breach of Contract, Breach of Good Faith and Fair Dealing, and Unjust Enrichment.[4] Brad's argument is that, because he is a "member-manager of HWJR" and Brad's pipe enters the property owned by HWJR, the contract into which he entered is actually a contract between Nick and the HWJR LLC entity, not between Nick and Brad.[5] This argument ignores the well-pleaded factual allegations in the Counterclaim and reverses the view of the interferences to be in Brad's favor.

Brad's argument is summed up as follows in his Motion: Because HWJR holds title to the parcel in question, not Brad, it therefore appears that the parties to the Water Agreement were Nick and HWJR, not Nick and Brad."[6] The basis for this assertion appears to be that HWJR authorizes Brad to "use the water on the HWJR parcel to tend cows he keeps on that land, but he only does

---

[4] ECF No. 87 at 28-30, 32.
[5] ECF No. 128 at 3-4.
[6] *Id*. at 3.

this because HWJR authorizes him to, independent of the Water Agreement."[7] None of this, however, is alleged in the Counterclaim.

Instead, Nick properly alleges that a contract was formed between himself and Brad, with Brad offering to pay for water in exchange for permission to attach his pipe to Nick's water supply and allowing water for his cows, and Nick accepting that offer.[8] Brad does not dispute that there was offer, acceptance, and consideration, but rather asserts that he was forming a contract on behalf of HWJR.[9] Brad's factual contentions fail to undermine the sufficiency of Nick's allegations and resulting inferences related to the Water Agreement. Because Nick's factual allegations must be accepted as true for the purposes of Brad's Motion, and the existence of a contract between Nick and Brad is a factual matter, the Court should reject Brad's Motion as to the first, second, and fifth causes of action.

## II.    CLAIMS ARISING UNDER THE WATER AGREEMENT ARE NOT BARRED BY THE STATUTE OF LIMITATIONS GIVEN BRAD'S RECURRENT BREACHES OF THE AGREEMENT.

Brad also argues that because the Water Agreement contract was formed and first breached in 2018, the four-year statute of limitations periods for breach of contract, breach of covenant of good faith and fair dealing, and unjust enrichment claims precludes Nick from recovering for any subsequent breach, even if he continues to receive and use Nick's water without paying for it.  This argument ignores the applicable statute and guidance from the Utah Supreme Court as to how it must be applied.

Specifically, the subject statute provides that "[a]n action may be brought within four years . . . after the last charge is made or the last payment is received . . . upon a contract, obligation, or

---

[7] *Id.* at 4.
[8] *See* ECF No. 87 at 19-20, ¶¶ 18-21.
[9] *See* ECF No. 128 at 3-4.

liability not founded upon an instrument in writing." Utah Code Ann. § 78B-2-307. The Utah Supreme Court has explained how this is to be applied to continuing or ongoing breaches.

> Many contracts not founded upon an instrument in writing such as oral contracts, implied contracts, and quasi-contracts—require charges and payments to be made, many of which are made more than four years after the parties agree to such payments. If the statute of limitations precluded a party from pursuing a cause of action before it accrued, then parties could breach contracts with impunity once the statute of limitations had expired.

*State v. Huntington-Cleveland Irrigation Co.*, 2002 UT 75, ¶ 18, 52 P.3d 1257, 1262 (cleaned up, citations omitted).

Here, Nick has alleged that Brad entered the Water Contract in 2018, that "[w]ater has flowed through Brad's Pipe to the HWJR property for Brad's use since that time to the present," that from the time the water began to be supplied until now "Brad has never paid Nick nor Mrs. Marriott for any use of the water obtained from the water supply," and that this constitutes a "long-standing and ongoing breach of" the Water Agreement."[10]  Because the Counterclaim alleges that Brad continues to receive and use Nick's water without paying for it afterwards, the four-year statute of limitations applicable to the first, second, and fifth causes of action are not time barred.

Brad further contends that dismissal of these causes of action is warranted because the Counterclaim does not allege that a "charge" was made under the Water Agreement, and there is "no claim" that a bill for such water usages was ever sent to Brad.  This argument fails for two reasons. First, Brad is not entitled to have any allegations that have not been asserted to be viewed in his favor.  To be clear, Nick has sufficiently plead each of the essential elements of these causes of action. Second, and more importantly, even if Nick's breach of contract claims are conditioned on the issuing of bills or invoices, Nick could still satisfy the statute of limitations by issuing such

---

[10] *See* ECF 87 at 19-21.

invoices now for Brad's unpaid water usage during the past four years. Accordingly, Brad's attempt to dismiss claims for recurrent and ongoing breaches of contract due to a four-year statute of limitations fails.

### III.    THE COUNTERCLAIM ALLEGES SUFFICIENT FACTS TO SUPPORT THE HAY THEFT CAUSES OF ACTION.

Brad's Motion also seeks to dismiss Nick's causes of action arising from hay theft on the purported bases that the Counterclaim fails to allege that hay was stolen, and/or that Nick suffered any damages as a result. Contrary to these assertions, the Counterclaim sufficiently alleges both theft of the hay by Brad, and damages.

"To prove conversion, a party must establish an act of willful interference with property, done without lawful justification, by which the person entitled to property is deprived of its use and possession, and the party is entitled to immediate possession of the property at the time of the alleged conversion." *Rand v. KOA Campgrounds*, 2014 UT App 246, ¶ 11, 338 P.3d 222, 225 (quoting *Jones & Trevor Mktg., Inc. v. Lowry*, 2010 UT App 113, ¶ 15 n. 13, 233 P.3d 538 (cleaned up)). Nick alleged each of these elements.

With respect to the hay thefts, the Counterclaim alleges that Brad directed his agents Casey Hotchkiss and Sam Kendrick to enter the Marriott property to take Nick's hay bales, and they followed Brad's directions.[11]  Nick included in the Counterclaim allegations that described the unlawful nature of the entry of Brad's agents onto his land and their unlawful deprivation of the hay bales.  Nick also sufficiently alleged that he was entitled to the hay bales at the time of the conversion as well.

Brad also asserts that his defense of consent is a sufficient basis now to dismiss Nick's hay

---

[11] *See* ECF 87 at 21-24, 31, 34.

theft claims.  Under this argument, Brad claims that he had "irrevocable" license to enter due to Nick's alleged "implied consent", and that Nick obtained a benefit of hay removal "at no cost to Nick." The argument is more-or-less based on Brad's version of the story, which assumes inferences from the alleged facts in his favor. Brad's position, which is not alleged in the Counterclaim, is not a basis to dismiss under Rule 12(b)(6).

The Court must accept Nick's well-plead allegations as true with all reasonable inferences afforded in Nick's favor. Brad's subjective and self-serving interpretation of the events on the matter have no bearing on the sufficiency of Nick's pleading and may not be considered when deciding Brad's Motion. His Motion as to the hay theft causes of action, therefore, should be denied.

## IV.   NICK HAS SUFFICIENTLY PLEAD FACTS SUPPORTING COUNTERCLAIMS FOR BOTH INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

While Brad argues that Nick's counterclaim for intentional infliction of emotional distress fails to meet the applicable pleading standards, his argument actually pertains to the applicable standard of *proof* rather than a standard of *pleading*. Relying heavily on *Nassi v. Hatsis*, 2023 UT App 9, 525 P.3d 117, Brad explains what must be *established* to prevail on an IIED claim. *Nassi*, however, was on appeal from summary judgment.  The Utah Court of Appeals in that decision explained:

> The tort of intentional infliction of emotional distress requires *proof* that the defendant intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.

*Nassi* at ¶ 38 (citing *Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, ¶ 58, 70 P.3d 17) (emphasis added). Because this case is not at the summary judgment stage, Nick need not prove his counterclaims to avoid dismissal.  He is only required to sufficiently plead them.

Rather than make an assessment of evidence supporting Nick's IIED counterclaim after discovery has been conducted, Brad seeks a premature assessment of Nick's allegations on the matter, which include that Brad (Nick's employer) followed Nick and his minor daughter to the house of her friend, parked his vehicle to the side and rear of Nick's vehicle and shined his lights into the passenger compartment, parked his vehicle on the adjacent HWJR property with the hood pointed at the house on numerous occasions, stared at their house for hours on end, and drove across the Marriott property multiple times per day for several days after he sued Nick in Utah State Court. These alleged acts, when considered in the light most favorable to Nick, are more egregious than simply "'parking near someone's house, visiting a facility where that person works three times, and threatening to sue.'"[12]

Regardless, this assessment of whether Brad's conduct is sufficient to support a claim for IIED should be undertaken after discovery is completed. It is not until that point in time that the Court will be able to adequately determine whether Brad's conduct was "outrageous and intolerable." Nick has plead facts that support each of the elements of intentional infliction of emotional distress, including that his actions would be considered outrageous and intolerable. Brad's behaviors toward Nick, his family, his real property, and personal property before and after filing suit against Nick were either intended to cause emotional distress or a reasonable person would have known they would cause distress. Those acts, as alleged in the Counterclaim are plead in detail over more than fifty paragraphs and include vehicle tailings involving minor children, lengthy surveillance, property incursions, and theft of personal property, when viewed in the light most favorable to Nick, are sufficiently outrageous and intolerable from a reasonable standard of

---

[12] *Id*. at 11, quoting *Nassi* at ¶ 42.

decency and morality.[13]

Brad's analysis of Nick's negligent infliction of emotional distress counterclaim fails for the same reason. The Motion asserts Nick's injuries are "less severe than those rejected as insufficient in *Snow*."[14] Notwithstanding the fact that the primary cited case involved a bank's foreclosure of the plaintiff's house, Brad's assessment of Nick's injuries is not relevant to the Rule 12(b)(6) pleading standard.[15] Importantly, Nick need only plead facts supporting his negligent infliction of emotional distress counterclaim.

Similar to the intentional infliction of emotional distress claim, Nick has sufficiently plead facts supporting the NIED elements. Specifically, the Counterclaim alleges that Brad's pattern of behavior towards Nick and his family resulted in intimidation, fright, shame, humiliation, embarrassment, anger, chagrin and worry, causing Nick to experience sleep disturbance, fatigue, low mood, decreased appetite, weight loss, and strained family relations. When considered in the light most favorable to Nick, these allegations are sufficient to demonstrate such severe emotional distress that a reasonable person would be unable to adequately cope with the resulting mental stress.

For the above reasons, the Motion as related to Nick's counterclaims of intentional and negligent infliction of emotional distress should be denied.

## V.   THE STALKING CAUSE OF ACTION IS PROCEDURALLY PROPER AND SUFFICIENTLY SUPPORTED BY RELEVANT ALLEGATIONS.

Brad asserts that Nick's counterclaim for civil stalking is procedurally deficient and cannot be heard in a Federal Court.[16] While Utah's Civil Stalking Injunction state requires certain

---

[13] ECF No. 87 at 21-28, 34-35 ¶¶ 30-84, 138-142.
[14] ECF No. 128 at 14 (citing *Snow v. Chartway Fed. Credit Union*, 2013 UT App 175, ¶ 15, 306 P.3d 868).
[15] *Id*.
[16] ECF No. 128 at 15.

procedural steps to be followed, each of those have been met here.  Furthermore, this Court is best positioned to assess Nick's stalking counterclaim and related request for injunctive relief that arise from the same nucleus of operative facts presented in the Complaint.

Utah Code § 78B-7-701, which pertains to civil stalking injunctions, requires a "verified written petition for a civil stalking injunction with the district court in the district in which the individual or respondent resides, is temporarily domiciled, or in which any of the events occurred." Utah Code Ann. § 78B-7-701(1)(a)(i). Nick's Counterclaim was filed as such in part due to the requirement of the Civil Stalking Injunction statutory requirements.[17] The Counterclaim is filed in a district court in the district where both the individual and the respondent resides and in which the events occurred.[18]  While § 78B-7-701 is a Utah state statute, it is not specific or limiting in its jurisdiction to Utah state district courts based its plain language.[19]

The statute also provides that a petition for a civil stalking injunction must include the petitioner's name, the name and address of the respondent, the specific events and dates of the actions constituting the alleged stalking, and corroborating evidence of the stalking, which may be in the form of a police report that tends to prove the allegation of stalking.[20]  Nick has provided each of these in the Counterclaim: the names, addresses of each of the parties, the specific events and dates, and corroborating evidence are all included or attached to the pleading.[21]  Nick's cause of action is therefore procedurally compliant with the statute.

---

[17] ECF No. 87.
[18] *Id*.
[19] Utah Code Ann. § 78B-7-701(1)(a)(i) ("Except as provided in Subsection (1)(b) [prohibiting injunctions against law enforcement, government investigators, or licensed private investigators acting in an official capacity], an individual who believes that the individual is the victim of stalking may file a verified written petition for a civil stalking injunction against the alleged stalker with the district court in the district in which the individual or respondent resides, is temporarily domiciled, or in which any of the events occurred.").
[20] Utah Code Ann. § 78B-7-701(2)(a)
[21] ECF No. 87.  *See e.g.*, Ex. 5 "Weber County Sheriff's Office Incident 24WC33097.

Furthermore, the stalking claim is arguably compulsory as it arises out of the same transaction or occurrence as all of the other causes of action in Nick's Counterclaim and the other pleadings in this matter. To avoid waiving the cause of action, Nick must include stalking within this Counterclaim, as it arises out of the context of this same set of facts and circumstances and does not require adding another party over whom the Court cannot acquire jurisdiction.[22]

After Plaintiffs filed their case in Utah district court, they elected to file a parallel action in this Court.[23] Brad should not be able to force Nick to waive his claim for relief under a state stalking statute by electing to move the matter to another venue.  Nor should Brad be able to force Nick to open a parallel case in the venue he elected to abandon, re-establish and re-litigate the same set of facts and circumstances in a court that is not privy to the same level of information as this Court.

Brad cites to the local rules for the District of Utah: DUCivR 3-5 Motions in Pleadings Prohibited ("A complaint, counterclaim, or crossclaim must not include a motion. A motion accompanying a complaint [for example, a motion for temporary restraining order] must be prepared and filed as a separate document.").  Nick is not attempting to circumvent this rule by including this cause of action, and he is not including a motion within his Counterclaim.  To the contrary, Nick has included in good faith all of the procedural requirements and, referencing the same allegations and record, has sufficiently plead the required elements of stalking as per Utah Code § 76-5-106.5, including the course of conduct, emotional distress, and Brad's intentional or

---

[22] Utah R. Civ. P. 13. ("A pleading must state as a counterclaim any claim that--at the time of its service--the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.").

[23] *See Kendrick Bros. Roofing, Inc. et al. v. Kendrick et al.*, No. 240906184, 3rd Dist. Ct. Utah (Salt Lake Cnty.) (Aug. 7, 2024).

knowing engagement in the course of conduct.[24]

## CONCLUSION

For the reasons above, Counterclaim-Defendant Brad Kendrick's Motion to Dismiss Counterclaims of Joe Nicolas Marriott should be denied in its entirety.

DATED this 17th day of February 2025.

**SPENCER FANE LLP**


/s/ Nathan R. Skeen
Jason D. Hawkins
Scott Young
Nathan R. Skeen
*Attorneys for Defendant Joe Nicolas Marriott*

---

[24] ECF No. 87 at 36-37 ¶¶ 152-158. See Utah Code Ann. § 76-5-106.5(1)-(2).

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2025, I caused a true and correct copy of the foregoing

**MEMORANDUM IN OPPOSITION TO COUNTERCLAIM-DEFENDANT BRAD KENDRICK'S MOTION TO DISMISS COUNTERCLAIMS OF JOE NICOLAS MARRIOTT** to be electronically filed via the court's CM/ECF system, which will send notification to the following:

| | |
|---|---|
| Andrew G. Deiss | Aaron B. Clark |
| Andrew D. Miller | Lyndon Rone Bradshaw |
| DEISS LAW PC | Madeline Aller Hock |
| 10 West 100 South, Suite 700 | DENTONS DURHAM JONES & |
| Salt Lake City, UT 84101 | PINEGAR PC |
| deiss@deisslaw.com | 111 S MAIN ST STE 2400 |
| amiller@deisslaw.com | PO BOX 4050 |
| *Attorney for Plaintiffs and HWJR, LLC* | SALT LAKE CITY, UT 84110-4050 |
| | aaron.clark@dentons.com |
| | lyndon.bradshaw@dentons.com |
| | madeline.hock@dentons.com |
| | *Attorneys for Gregory W. Kendrick, Jennifer L. Kendrick, Ethan B. Kendrick, Jennifer Higashiyama, Orchard Elms, LLC, Bobcat Investment Irrevocable Trust, Bylb Living Trust, DOCW35 Trust, MDAA Living Trust, SJK Trust, GJK Living Trust, KBR Construction Services, LLC, KBR Payroll LLC* |

   */s/ Penny Brown*
Legal Assistant